UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

DERRICK LAMAR DORN,              :
                                 :
         Petitioner              :      No. 4:CV-09-2138
                                 :
    vs.                          :      Petition Filed 11/03/09)
                                 :
GERALD L. ROZUM,                 :      (Judge Muir)
                                 :
         Respondent              :

## MEMORANDUM AND ORDER

March 18, 2011

Petitioner, Derrick Lamar Dorn, filed the instant counseled petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He attacks a conviction imposed by the Court of Common Pleas for Dauphin County, Pennsylvania. (Doc. 1).  For the reasons that follow, the Court will deny the petition.

## I.  Background

The following background has been extracted from the Trial Court's May 27, 2008 Memorandum Opinion Pursuant to Pa.R.A.P. 1925(a). (Doc. 10, Ex. F, Memorandum Opinion).

> Defendant was a certified nursing assistant (CNA) at the Susquehanna Center, an extended care facility in Harrisburg, Pennsylvania.  A CNA is assigned to a number of residents and was responsible for duties such as bathing, washing, feeding, positioning and taking vital signs of the resident. [N.T. 2-15-05 p. 30-31].  On the evening of October 12-13, 2001, Peggy

Schmidt was a resident at the Susquehanna Center, and Dismus Irungu was employed as a charge nurse. A charge nurse is in charge of directing staff as to the care of the residents on a certain floor. [N.T. 2-15-05 pp. 27-29]. It was the first night that Irungu and Defendant worked together. [N.T. 2-15-05 pp. 30-31]. The two worked on the 3:00 p.m. to 11:00 p.m. shift together, then both worked the 11:00 p.m. to 7:00 a.m. shift. Defendant was very curious as to when Irungu was going to take his break and, at about 3:30 a.m., Irungu told Defendant that he was going on his ½ hour break; additionally, two other CNA's working the floor took breaks at that time. [N.T. 2-15-05 pp. 32-34].

Irungu did not take his full break; instead, he returned to the floor after about ten minutes had gone by. When he got off of the elevator, heard noises coming from Schmidt's room; specifically, "creaking" noises and Schmidt's voice saying "nah, nah." [N.T. 2-15-05 p. 35]. Irungu entered Schmidt's room and noticed that the curtain was drawn. Irungu stepped inside the curtain, observed Schmidt with her gown drawn up over her breasts, her legs up, and Defendant between her legs having sex with her. [N.T. 2-15-05 p. 36] Irungu asked what he was doing, to which Defendant responded, "Oh, shit." [N.T. 2-15-05 pp. 36-37]. Defendant pulled out of Schmidt, and, still with an erection, proceeded toward Irungu, who warned him away. Defendant begged Irungu to keep the incident quiet. [N.T. 2-15-05 p. 37]. Irungu went to the nurses' station and paged Rose Umana, the supervisor, who was on the second floor at the time; he told her that there was going to be a 911 call. [N.T. 2-15-05 p. 43].

Umana got off the elevator on the third floor, and observed Defendant sitting at the nurses' station with his head down. [N.T. 2-16-05 p. 6]. Defendant was unresponsive when Umana asked him what happened. Irungu explained what happened. Umana recalled that

Schmidt, whom she had known for about a year, was not able to communicate beyond a murmur, was mentally impaired and lacked judgment. [N.T. 2-16-05 p. 8]. In fact, Dr. Herman Lawson, Schmidt's attending physician for approximately three years, testified that Schmidt was totally dependent on others to survive, suffered from brain trauma, dementia, and a seizure disorder and was not able to consent to sexual activity.[1] [N.T. 5-15-05 pp. 65-67, 70]. Defendant apologized to Umana, and stated that he "didn't mean to do it." He further relayed that Schmidt had invited him, and that he did not have an orgasm. [N.T. 2-16-05 pp. 9-10]. After telling Defendant that he was sick and needed a clergyman, Umana called the director of nursing and the police. [N.T. 2-16-05 p. 10].

......

Following a jury trial held on September 9, 2002, Defendant, proceeding pro se, was found guilty of Rape of a Mentally Disabled Person. <u>See</u> 18 Pa.C.S.A. § 3121 (a)(5).[2] Defendant was sentenced to 114 to 240 months imprisonment. Defendant appealed, and the Superior Court vacated the judgment and remanded for a new trial.

A second trial was held in February, 2005. Again, a

---

[1]Additionally, DNA evidence showed that sperm cells in vaginal swabs came from Dorn. (Doc. 10, Ex. B. N.T. 2/16/05 at 89-90).

[2]18 Pa.C.S.A. § 3121 (a)(5)reads as follow:
(a) Offense defined.--A person commits a felony of the first degree when the person engages in sexual intercourse with a complainant:

(5) Who suffers from a mental disability which renders the complainant incapable of consent.

jury found Defendant guilty and this Court sentenced
him to 120 to 240 months incarceration.  On September
13, 2005, Defendant filed a notice of appeal.  No
action was taken due to the fact that the notice of
appeal was filed pro se while Defendant was
represented, and also because the motion was
untimely.  On October 11, 2005, Defendant filed a
Motion for Withdrawal of Counsel; such Motion was
granted, and this Court appointed substitute counsel
to represent Defendant.  On November 11, 2005,
Defendant filed a pro se petition for relief under
the Post Conviction Relief Act.  See 42 Pa.C.S.A. §§
9541 et seq.  On May 3, 2006, Defendant filed an
Amended PCRA petition, through counsel.  The PCRA
court granted relief in the form of reinstatement of
the right to appeal nunc pro tunc on October 2, 2006.
That order was subsequently vacated on October 4,
2006.

An evidentiary hearing was held on November 17, and
December 6, 2007, relating to Defendant's Amended
Petition.

Id.  By Order of Court dated November 14, 2007, the PCRA court

reinstated petitioner's appellate rights by finding the

following:

Given the overwhelming nature of the evidence, the
complaints as to decisions made at trial are
dismissed; however, the court does find that trial
counsel failed to timely file post-trial motions
and/or direct appeal subsequent to receiving
notification from defendant. Defendant's counsel,
Jason P. Kutulakis is directed to continue
representation and preserve the appropriate issues on
appeal.

(Doc. 10, Ex. A, copy of Docket of Court of Common Pleas, No.

CP-22-CR-0004059-2001).

On November 29, 2007, petitioner filed a notice of appeal to the Pennsylvania Superior Court. Id. He subsequently filed a concise statement of matters complained of on appeal in which he raised the following issues:

1.  Trial Errors:

    a.  The Trial Court overruled Anthony Thomas' objection to the admission of any evidence relating to forcible compulsion.

    b.  The Trial Court erroneously granted the Commonwealth's motions to apply the rape shield statute to the victim's medical records.

2.  Ineffective Assistance of Counsel:

    a.  It is believed and therefore averred that Anthony Thomas told Defendant the day that his trial started that he was not prepared to go to trial, but he did not think that the court would grant him any more continuances.

    b.  Anthony Thomas failed to request a continuance even after acknowledging his lack of preparation and inability to go to trial to his client.

    c.  Anthony Thomas failed to create a record for the Appellant to pursue issues that may have been appealable.

d. Anthony Thomas failed to object after a sidebar with the Judge regarding nursing notes; it is believed and therefore averred that during that sidebar, Mr. Thomas attempted to introduce these notes as evidence and the Honorable Judge Evans did not allow Mr. Thomas to do so.

e. Anthony Thomas failed to object to any of the witnesses who offered opinions as they were being qualified as experts, and therefore should have sought expert reports pretrial pursuant to Pa.R.Crim.P. 573.

f. It is believed and therefore averred that Appellant did not receive the state's expert report.

g. Anthony Thomas failed to file a Motion to Compel pursuant to Rule 573 in order to force the prosecution to give a copy of the report to the Defendant.

h. Anthony Thomas failed to request a separate evaluation of the victim to determine her mental capacity.

i. Anthony Thomas failed to object to hearsay that was introduced through many of the state's witnesses, including but not limited to Dr. Lawson and Rose Umana.

j. Anthony Thomas failed to object to the prejudicial admission of the photographs of the bloody diaper

or bloody bed pan.

k.  Anthony Thomas failed to subpoena the state witnesses that he wished to recall to the stand; therefore, these witnesses were unable to be recalled to the stand during the Defendant's case-in-chief, as they had left the building.

l.  Anthony Thomas did not prepare the Defendant before he testified in court.

m.  Anthony Thomas failed to prepare jury instructions per the Judge's directive.

n.  Anthony Thomas failed to submit the jury instructions that his client had handwritten and requested they be submitted to the judge.

o.  Anthony Thomas failed to object to the sentence that was imposed based on the fact that there was a lack of sufficient reason to depart from the standard applicable guideline range as the court did not sufficiently place the basis on the record.

p.  Anthony Thomas failed to file a post-sentence motion on his client's behalf.

q.  Anthony Thomas had no contact with Appellant between the time that he was found guilty and the sentencing hearing.

> r. Anthony Thomas failed to show at three (3) sentencing hearings and was brought to the sentencing hearing on August 11, 2005 by a sheriff.
>
> s. Anthony Thomas repeatedly told his client that he was having issues with his life that were affecting his ability to effectively represent the Defendant, but never sought permission to withdraw.
>
> t. Anthony Thomas was complaining of persons bugging his office and purportedly putting viruses onto his computers in his office.
>
> u. It is believed and therefore averred that none of this occurred and that Anthony Thomas was unable to understand this.

(Doc. 10, Ex. F, Trial Court Memorandum Opinion pursuant to Pa.R.A.P. 1025(a), filed May 27, 2008).

By Memorandum Opinion dated May 27, 2008, the trial court affirmed the judgment of sentence, finding the following:

> Ultimately, in light of the convincing evidence of the egregious crime committed by Defendant, this Court finds that none of the foregoing challenges are sufficient to warrant relief. As there was no error on the part of the Trial Court, it is respectfully submitted that the judgment of sentence be affirmed.

Id.

Petitioner filed an appeal to the Pennsylvania Superior

Court in which he raised the following two issues for review in his Pa.R.A.P. 1925(b) statement of errors:

> 1. Whether trial counsel's cumulative errors resulted in his ineffectiveness essentially causing Appellant to receive no assistance of counsel at trial?
>
> 2. Whether trial court erred during trial, creating matters which are appealable?

(Doc. 10, Ex. I, Memorandum Opinion dated February 5, 2009).

In a Memorandum Opinion dated February 5, 2009, the Pennsylvania Superior Court, affirmed the judgment of sentence, finding the following:

> We have reviewed the record, the parties' briefs, the trial court opinion and the applicable law. We conclude that the trial court's well-reasoned opinion of May 27, 2008 aptly addresses Appellant's individual ineffective assistance of counsel arguments.[3] Specifically, we agree with the trial court and the Commonwealth that, in light of the overwhelming evidence of Appellant's guilt, trial counsel's alleged errors, viewed individually, did not prejudice Appellant.
>
> We also conclude that the trial court adequately addresses Appellant's claims of trial court error. In summary, we reject Appellant's ineffective

_____

[3]Many of Appellant's arguments fail to contain citation to pertinent portions of the record and argument with respect to each prong of the ineffective assistance of counsel analysis. This is an independent basis for rejecting them. Pa.R.A.P. 2119(b), (c); Commonwealth v. Natividad, 938 A.2d 310, 340 (Pa. 2007).

> assistance of counsel arguments based on the trial court opinion. We reject Appellant's constructive denial of counsel argument based on this memorandum. We reject Appellant's claims of trial court error based on the trial court opinion. Since none of Appellant's arguments are meritorious, we affirm the judgment of sentence.

Id.

On March 9, 2009, petitioner filed a petition for allocatur with the Supreme Court of Pennsylvania, which was denied on September 9, 2009. (Doc. 10, Ex. J., copy of Docket of Supreme Court of Pennsylvania, No. 150 MAL 2009).

On November 3, 2009, Dorn filed the instant petition for writ of habeas corpus in which he claims trial counsel was ineffective for failing to:

    a.    file an appeal at his client's demand;

    b.    demand and compel discovery for expert reports and opinions;

    c.    prepare for trial;

    d.    prepare client prior to testifying in court;

    e.    seek a continuance when he is not prepared to go to trial;

    f.    inform his client of problems affecting his ability to represent his client;

    g.    discuss with his client the right to testify and the consequences of testifying;

h.    prepare and submit jury instruction when appropriate;

i.    prepare for sentencing;

j.    communicate with his client;

k.    call witnesses where probative;

l.    properly admit favorable testimony;

m.    raise an objection to inadmissible evidence when appropriate;

n.    file Motions in Limine to preclude damaging evidence;

o.    subpoena witnesses that the attorney seeks to recall to the stand; and

n.    file post-sentence motions on the client's behalf to modify the sentence when appropriate.

(Doc. 2, Memorandum of Law in support of petition).

In accordance with <u>United States v. Miller</u>, 197 F.3d 644 (3d Cir. 1999) and <u>Mason v. Meyers</u>, 208 F.3d 414 (3d Cir. 2000), the Court issued formal notice to Dorn that he could either have the petition ruled on as filed, that is, as a § 2254 petition for writ of habeas corpus and heard as such, but lose his ability to file a second or successive petition, absent certification by the court of appeal, or  withdraw his

petition and file one all-inclusive § 2254 petition within the one-year statutory period prescribed by the Antiterrorism Effective Death Penalty Act ("AEDPA"). (Doc. 4). Upon Dorn's failure to return the notice of election form, the Court issued a Show Cause Order, indicating that petition for writ of habeas corpus will proceed as filed. (Doc. 5). A response to the petition has been filed. (Doc. 10). However, although provided the opportunity to file a traverse, no traverse was filed.

## II. <u>Standards of Review</u>

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 498-499 (1973). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-8 (1991). Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); <u>Estelle</u>, 502 U.S. at 67-8 (1991); <u>see also Pulley v. Harris</u>, 465 U.S. 37, 41 (1984);

12

<u>Johnson v. Rosemeyer</u>, 117 F.3d 104 (3d Cir. 1997).

### A.  <u>Exhaustion</u>

"A federal court may not grant a writ of habeas corpus unless (1) 'the applicant has exhausted the remedies available in the courts of the state', (2) no such state remedy is available or (3) available remedies are ineffective to protect the applicant's rights.  28 U.S.C. § 2254(b)(1)." <u>Henderson v. Frank</u>, 155 F.3d 159, 164 (3d Cir. 1998).  "The exhaustion requirement is satisfied when the state courts have had an opportunity to pass upon and correct alleged constitutional violations." <u>Evans v. Court of Common Pleas, Delaware County, Pa.</u>, 959 F.2d 1227, 1230 (3d Cir. 1992).  The exhaustion requirement "is not a mere formality.  It serves the interests of comity between the federal and state systems by allowing the state an initial opportunity to determine and correct any violations of a federal prisoner's federal rights." <u>Gibson v. Scheidemantel</u>, 805 F.2d 135, 138 (3d Cir. 1986). "Unless it would be patently futile to do so [state prisoners] must seek relief in state court before filing a federal habeas petition...." <u>Santana v. Fenton</u>, 685 F.2d 71, 77 (3d Cir. 1982).

The habeas corpus petitioner shoulders the burden of establishing exhaustion of state court remedies. McMahon v. Fulcomer, 821 F.2d 934, 940 (3d Cir. 1987). The threshold inquiry in the exhaustion analysis is whether the claims asserted in the habeas corpus petition have been "fairly presented" to the state courts. Picard v. Connor, 404 U.S. 270, 275 (1971). "All claims that a petitioner in state custody attempts to present to a federal court for habeas review must have been fairly presented to each level of the state courts." Lines v. Larkins, 208 F.3d 153, 159 (3d Cir. 2000), cert. denied, 531 U.S. 1082 (2001). Fair presentation requires that the "substantial equivalent" of a petitioner's federal habeas claims be presented to the state courts. Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997).

The respondent concedes that petitioner has exhausted his state court remedies. The merits of the claims will therefore be addressed.

**B. Merits**

"The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas

'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." <u>Bell v. Cone</u>, 535 U.S. 685, 693 (2002). Specifically, when a federal-law issue has been adjudicated on the merits by a state court, the federal court reverses only when the decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence. 28 U.S.C. § 2254(d).[4] <u>See generally</u>, <u>Knowles v. Mirzayance</u>, --- U.S. ----, ---- - ----, 129 S.Ct. 1411, 1418-19, 173 L.Ed.2d 251 (2009); <u>Gattis v. Snyder</u>, 278 F.3d 222, 234 (3d Cir.2002); <u>Moore v. Morton</u>, 255 F.3d 95,

---

[4]Specifically, 28 U.S.C. § 2254(d)provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

104-05 (3d Cir.2001). The Supreme Court has held that the "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meaning. <u>Williams v. Taylor</u>, 529 U.S. 362, 404-405 (2000). As explained in <u>Bell</u>:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable ....
> <u>Bell</u>, 535 U.S. at 694 (citations omitted).

In a recently announced decision, <u>Renico v. Lett</u>, --- U.S. ----, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010), the United States Supreme Court, quoting <u>Williams</u>, explained that "an unreasonable application of federal law is different from an incorrect application of federal law." <u>Id</u>. at 1862. Therefore, a federal court may not grant habeas relief simply because it has concluded in its independent judgment that the state court decision applied clearly established federal law erroneously or

16

incorrectly.[5] Id. Rather, the state court application must be objectively unreasonable. Renico added that this distinction creates a substantially higher threshold for obtaining relief under § 2254 and imposes a highly deferential standard for evaluating state court decisions. Simply put, "state-court decisions [must] be given the benefit of the doubt." Id. quoting Woodford v. Viscotti, 537 U.S. 19, 24 (2002) (per curiam).

This deferential standard of review applies to state court decisions on ineffective assistance of counsel claims. Bell, 535 U.S. at 694-98. Furthermore, resolution of factual issues by the state courts are presumed to be correct unless the petitioner shows by clear and convincing evidence that they are not. 28 U.S.C. § 2254(e)(1).

**III.     Discussion**

**A.     Ineffective Assistance of Counsel**

In Strickland v. Washington, 466 U.S. 668, 688 (1984), the United States Supreme Court established a two-pronged test for

---

[5]"Whether the trial judge was right or wrong is not the pertinent question under the AEDPA." Id. at 1865 n. 3, 671 A.2d 773.

habeas petitioners seeking relief on the basis of ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. See Jermyn v. Horn, 266 F.3d 257, 282 (3d Cir.2001). That is, he must show that counsel's "representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. There exists a "strong presumption" that trial counsel's performance was reasonable and might be considered sound trial strategy. Jermyn, 266 F.3d at 282 (quoting Berryman v. Morton, 100 F.3d 1089, 1094 (3d Cir.1996)); Strickland, 466 U.S. at 690.

Second, a petitioner must show that he was prejudiced by the deficient performance. Strickland, 466 U.S. at 687. The prejudice test is whether there is a reasonable probability that, but for the deficient performance, the outcome of the proceedings would have been different. Id. at 694. A reasonable probability is one that is "sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. "Without proof of both deficient performance and prejudice to the defense ... it could not be said that the sentence or conviction resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable, and the sentence or conviction

18

should stand." <u>Bell</u>, 535 U.S. at 695 (internal quotations and citation omitted).

Where there is a reasonable basis for a tactical decision made by defense counsel, a finding of ineffective assistance cannot be reached. <u>See</u> <u>Burger v. Kemp</u>, 483 U.S. 776 (1987). In other words, "substantial deference is to be accorded counsel's tactical decisions." <u>United States v. Wiener</u>, 127 F.Supp.2d 645, 648 (M.D.Pa.2001). Furthermore, "reviewing courts must be deferential in their scrutiny and scrupulously avoid the distortions of hindsight by viewing performance from counsel's perspective at the time." <u>Everett v. Beard</u>, 290 F.3d 500, 509 (3d Cir.2002). Finally, "because the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." <u>Knowles v. Mirzayance</u>, --- U.S. ----, ----, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009).

When the Pennsylvania state courts reviewed the claims raised by Dorn, <u>Strickland's</u> familiar two-pronged test was the "clearly established federal law" applicable to ineffective assistance of counsel claims. Under Pennsylvania state jurisprudence, a three-prong test is applied to ineffective

19

assistance of counsel claims, but is, in substance, identical to the Strickland test. See, e.g., Commonwealth v. Johnson, 565 Pa. 51, 771 A.2d 751, 757 (Pa.2001). The Third Circuit Court of Appeals has held that Pennsylvania's test for assessing ineffective assistance of counsel claims is not contrary to Strickland. Jacobs v. Horn, 395 F.3d 92, 107 n. 9 (3d Cir.2005); Werts v. Vaughn, 228 F.3d 178, 204 (3d Cir.2000). Thus, under § 2254(d)(1), the relevant inquiry in addressing an ineffectiveness claim that has been adjudicated on the merits is whether the Pennsylvania state court decision involved an unreasonable application of Strickland. Jacobs, 395 F.3d at 107 n. 9; Werts, 228 F.3d at 204.

Petitioner in this case advances no argument that the Superior Court decision is contrary to extant United States Supreme Court precedent. In this regard, petitioner does not maintain that the ineffective assistance test applied by the state court is inconsistent with the test established in Strickland and developed in its progeny. Thus, each asserted instance of ineffective assistance will be considered against this standard.

**1. Counsel's failure to file any post-trial motions**

**and/or a direct appeal.**

Dorn claims that he is entitled to have his appellate rights protected and the failure to protect such rights is a violation of the assistance of counsel guaranteed by federal and state constitutions and constitutes prejudice for the purposes of section 9543(a)(2)(ii). See Commonwealth v. Lantzy, 736 A.2d 564 (Pa. 1999).

The presumed prejudice standard petitioner alludes to is derived from United States v. Cronic, 466 U.S. 648 (1984), decided the same day as Strickland. Pursuant to Cronic, prejudice may be presumed when there has been an actual or constructive denial of counsel, i.e., when counsel's failure has been complete and it is as if the right to counsel has been denied. See Florida v. Nixon, 543 U.S. 175, 190 (2004).

Cronic recognized that in some cases, the prejudice inquiry of Strickland is not required because there are certain circumstances "that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." 466 U.S. at 658. Cronic suggested that where there has been a complete denial of counsel or where the circumstances are such that any competent attorney would be

21

unable to provide effective assistance, a defendant need not demonstrate that he was prejudiced by counsel's actions. Id. at 659-62. The presumed prejudice exception to Strickland has been found to apply where there was an actual or constructive denial of counsel, the state interfered with counsel's assistance, or counsel had an actual conflict of interest. See Smith v. Robbins, 528 U.S. 259, 287(2000).

The Pennsylvania Supreme Court has employed a Cronic-style presumption of prejudice where counsel's constitutional error has caused a total failure in the relevant proceeding. See, e.g., Commonwealth v. Halley, 582 Pa. 164, 870 A.2d 795, 801 (2005) (prejudice presumed where counsel failed to file statement of matters complained of on appeal, which led to waiver of all claims); Commonwealth v. Lantzy, 558 Pa. 214, 736 A.2d 564, 572 (1999) (prejudice presumed where counsel's failure to file requested direct appeal unjustified).

The trial court recognized this prejudice when raised by petitioner in his PCRA petition, and reinstated Dorn's appellate rights with the following:

> Given the overwhelming nature of the evidence, the complaints as to decisions made at trial are dismissed; however, the court does find that trial

> counsel failed to timely file post-trial motions
> and/or direct appeal subsequent to receiving
> notification from defendant. Defendant's counsel,
> Jason P. Kutulakis is directed to continue
> representation and preserve the appropriate issues on
> appeal.

(Doc. 10, Ex. A, copy of Docket of Court of Common Pleas, No.
CP-22-CR-0004059-2001).

Thus, the state court remedied counsel's deficient
performance by reinstating petitioner's direct appeal rights.
As such, petitioner is not entitled to habeas corpus relief on
the this claim.

### 2. Counsel was ineffective for failing to preclude testimony/evidence of forcible compulsion.

Petitioner claims that forcible compulsion is not an
element of any crime for which he was charged, and that trial
counsel was present at an in-camera proceeding wherein he
raised the issue of precluding any evidence of forcible
compulsion. (Doc. 2, Memorandum of law in support of
petition). However, trial counsel did not ensure the in-camera
proceeding was of record and allowed testimony of forcible
compulsion to be admitted without objecting. Id.

The PCRA Court addressed this claim as follows:

> Defendant first challenges the evidence relating to
> the "forcible compulsion" evidence. The evidence
> that Defendant used force to commit the rape was
> relevant. The testimony reveals that Defendant
> claims Schmidt consented to the intercourse, and this
> was also what he told the police officers. [N.T. 2-
> 15-05 pp. 25-37; 2-16-05 pp. 118-23]. Thus, evidence
> of force was clearly warranted.

(Doc. 10, Ex. F, Trial Court Memorandum Opinion Pursuant to

Pa.R.A.P. 1925(a), filed May 27, 2008).

Moreover, it appears from the trial transcript that

defense counsel tried to prevent this type of evidence from

entering but was denied by the trial court:

> **MR. THOMAS:** We would object to any evidence that
> would relate to a tendency to show some forcible
> compulsion, because that is not an element of this
> particular section of the statute. The fact is
> simply that he act or conduct occurred to this
> particular element, but forcible compulsion is not an
> element.
>
> **THE COURT:** The nature of the act has some force
> involved, slight as it may be, and we can charge the
> jury as such.
>
> **MR. THOMAS:** Not necessarily.
>
> **MR. KLEIN:** There has to be penetration, and in and of
> itself, that indicates there has to be force,
> especially when I am arguing my victim in this case
> is unable to acquiesce or not consent to the act.
>
> **MR. THOMAS:** That's precisely the point.

**THE COURT:** Didn't we have this discourse already?

**MR. THOMAS:** Not this part, Your Honor. But that's precisely the point. Because the victim is mentally incapacitated, she doesn't have the ability to consent, so forcible compulsion will support it. There is a myriad of caselaw on the absence of that particular element.

**THE COURT:** That may be, but I don't see any prejudice, Mr. Thomas. That's overruled. I will entertain any such motions at the appropriate time if it appears anything is out of the ordinary, but it has got to be admitted at some point. So we will cross that bridge.

(Doc. 10, Ex. B., N.T. 2/14/05 at 5-6). In light of defense counsel's attempt to preclude the testimony/evidence of forcible compulsion, it cannot be determined that counsel was ineffective. As such, the state court's determination was not based on an unreasonable application of the facts.

> **3. Counsel was ineffective for failing to properly admit evidence/testimony of treating nurses.**

Petitioner claims that counsel failed to raise issues petitioner pointed out to him that were in the nursing notes and/or medical noted regarding the victim's ability to consent in the case. Specifically, petitioner sought to introduce some of the nursing notes that reflected the fact that the victim

had previously engaged in sexual activity with an unidentified third person. (Doc. 2, Memorandum of Law in support of petition).

In rejecting this issues, the trial court found the following:

> Defendant next asserts that the medical records trial counsel sought to introduce would have potentially proven that the victim had a sexual encounter at the same facility with her husband and thus it was error for this Court to apply the rape shield statute to the victim's medical records. The Pennsylvania Rape Shield Statute, see 18 Pa.C.S. § 3104(a), clearly prohibits the type of testimony proffered by Defendant. Were there any evidence to present that Schmidt engaged in sexual relations with another person besides Defendant, such evidence would be inadmissible under the rape shield law.

(Doc. 10, Ex. F, Trial Court Memorandum Opinion Pursuant to Pa.R.A.P. 1925(a), filed May 27, 2008).

The trial transcript reveals that trial counsel tried to admit the evidence in question but was denied by the trial court:

> **MR. THOMAS:** Your Honor, we would also object to the Court's denial of the rape shield motions, which apparently had been granted the day before.

> **MR. KLEIN:** That's not correct.

> **MR. THOMAS:** I have simply looked at the docket record

on the system as opposed to the physical file, but it does indicate on there that the motion was, in fact, granted. Under the law of the case doctrine, the grant of that motion should carry forward through the remainder of the proceeding.

**THE COURT:** Beg pardon?

**THE KLEIN:** I have no idea what Mr. Thomas is talking about. I have one order from the 7th day of January saying Your Honor would look at these records in camera on Monday, January 10th - - which was, I think, the prior date of trial - - and Your Honor would make a determination upon that. And then on the very same day, after review, Your Honor issued an order denying that the records shall be introduced or admitted at trial. So I don't know where this order is - -

**MR. THOMAS:** Your Honor, I have a copy of the R.O.A. report.

**THE COURT:** Good. Let's see it.

**MR. THOMAS:** I think one of the last things - -

**THE COURT:** Which one?

**THE DEFENDANT:** January 7th or 10th.

**THE COURT:** The motion was granted to review it in camera. Let me see the docket, Pete. These are administerial inputted matters by clerical staff as to what's in the docket. So let's turn to - - here it is.

January 7th, the order reads: This 7th day of January, 2005, upon review of the defendant's rape shield motion, counsel for the defendant is hereby

ordered to produce the medical records references in Paragraph 4 of the motion. These records shall be produced no later than close of business Monday, January 10th, 2005 for in-camera inspection.

That is the January 7th order, and there is no other January 7th order other than that.

Then on the 10th, there is another order filed, and it says: And now, this 10th day of January, 2005, upon completion of an in-camera review of the records submitted by the defendant in support of his rape shield motion, the Court finds no basis in support of its motion. Accordingly, it is hereby ordered defendant's motion is denied, and defendant's information shall not be admitted at trial.

I don't care what the R.O.A. says. I know what the order says. So there was no conflict of orders.

**THE DEFENDANT:** Excuse me, Judge Evans. That information that you denied, it would have helped prove my case a lot. Now there is other information over there, about maybe 500 to 1,000 papers, valuable information.

**THE COURT:** That may or may not have been submitted to me. I don't know if it was or not. Now is not the time. There was an order for in-camera inspection by a date certain. I reviewed the information submitted as of the date certain. Upon its review, I found it was not, in fact, admitted, and that's how I ruled. Now we move forward.

(Doc. 10, Ex. B., N.T. 2/14/05 at 6-8).

The evidence was inadmissible under the Rape Shield Law, 18 Pa.C.S.A. § 3104. As such, trial counsel cannot be found to

be ineffective for failing to present inadmissible evidence

Thus, the state Court's decision does not reflect an unreasonable application of the facts in light of the evidence presented in state court.

**4. Counsel was ineffective for failing to compel the discovery of expert reports and opinion; prepare for trial; prepare client prior to testifying in court; seek a continuance of trial, inform petitioner of problems affecting his ability to represent him; submit jury instructions; prepare for sentencing; admit favorable testimony; object to inadmissible evidence; file motions in limine to preclude damaging evidence; and subpoena witnesses that he seeks to recall to the stand.**

In addressing petitioner's claims the trial court found the following:

With respect to Defendant's issues regarding counsel's alleged failure to object after sidebar, non-receipt of expert reports, failure to object to hearsay testimony, failure to object to certain photographs, challenges to submission of jury instructions, failure to adequately prepare Defendant regarding testimony, failure to subpoena state witnesses, counsel's complaints of both personal issues and issues in his office (i.e., persons "bugging" his office and placing computer viruses into his computer), and failure to file a motion to compel (and other pretrial errors), this Court likewise finds that Defendant was not prejudiced. Counsel's purported acts/omissions simply had no bearing on the outcome of this proceeding, where the

evidence against Defendant was overwhelming. <u>See</u> <u>Commonwealth v. Hutchinson</u>, 571 Pa. 45, 55, 811 A.2d 556, 562 (2002)(in light of overwhelming evidence of Defendant's guilt, Defendant failed to demonstrate a reasonable probability that the outcome of the trial would have been different in light of counsel's alleged errors); <u>see</u> <u>also</u>, <u>Washington</u>, <u>supra</u>.

The PCRA Court's decision does not reflect an unreasonable application of the facts in light of the evidence presented in state court.

Petitioner claims that trial counsel was ineffective for failing to retain a forensic expert to review the victim's medical records, examine the victim, and present an opinion regarding her capacity to consent to sexual intercourse. (Doc. 2, Memorandum of Law in support of petition). However, petitioner cannot demonstrate prejudice, as he has failed to produce an expert who would have reached the conclusion that the victim was competent.

To the extent that petitioner claims that trial counsel was ineffective for failing to move to compel discovery of the Commonwealth' expert witness' reports, these same experts testified during petitioner's September 9, 2002, trial. A transcript was made part of the record due to the prior appeal. As such, all of the information regarding the expert testimony

presented by the Commonwealth was available without any expert reports. In any event, petitioner, again fails to demonstrate how he was prejudiced by counsel's failure to compel these reports.

Petitioner next claims that trial counsel failed to file motions in limine and to object to the expert opinion provided by nursing supervisor, Rose Umana. (Doc. 2, Memorandum of Law in support of petition).

Contrary to petitioner's assertion, the record reveals that trial counsel filed a motion in limine, which was denied. (Doc. 10, Ex. B, N.T. 2/14/05 at 3). The following exchange reveals that defense counsel then attempted to renew the motion:

> **MR. THOMAS:** Your Honor, we would like to renew our motion in limine to exclude any inflammatory evidence with relation to the act itself, the act of sexual intercourse, or any results of the act, including the pictures. But I believe, if I recall correctly, counsel for the Commonwealth indicated he was not - -
>
> **THE COURT:** We have already decided the issue. Your exception is granted. We already decided that. We reviewed it, some of which Mr. Klein indicated he wasn't going to use.
>
> **MR. THOMAS:** In addition to that, Your Honor, we would move for exclusion of any DNA evidence or any

evidence which relates to the commission of the act, because the defendant is not here today to argue or contest the fact that sexual intercourse did, in fact, occur.

**MR. KLEIN:** Your Honor, I plan on introducing, especially in a jury trial, all the evidence I need to introduce to obtain - -

**THE COURT:** For the elements of the crime.

**MR. KLEIN:** Mr. Thomas has indicated that his client is not arguing whether sex occurred, and that may or may not be.

**THE COURT:** That's right. Once you get your case in chief put in, if you don't put everything in - - you have to prove your elements - - then I will have a motion for acquittal because you haven't proved your elements.

(Doc. 10, Ex. B, N.T. 2/14/05 at 3).

With respect to the alleged expert opinion provided by nursing supervisor, Rose Umana, there was no expert testimony provided by this witness. Umana was a fact witness who related events that she observed and described the condition of Schmidt, a resident with whom she was familiar. (See Doc. 10, Ex. B, N.T. 11-16-2005 at 4-23).

Petitioner also claims that Thomas failed to attack the victim's credibility to consent to granting a power of attorney

to her family. However, petitioner fails to demonstrate how her capacity at some unknown time (date of execution of the document was unknown) relates to her ability to consent in 2001. As such, petitioner fails to show how he was prejudiced by this.

Similarly, petitioner's claims that trial counsel was not prepared for trial, failed to seek a continuance of the trial to prepare, and failed to inform petitioner of "security issues" within counsel's office, also fail for petitioner's inability to show how these issues would have changed the outcome of his case.

On Dorn's reinstated direct appeal, the Pennsylvania Superior Court, addressed petitioner's claim that the above alleged errors, viewed collectively, amounted to a constructive denial of counsel, finding the following:

> Appellant also argues that counsel's alleged failures, considered cumulatively, amounted to a constructive denial of counsel. See United States v. Cronic, 466 U.S. 648 (1984). Appellant did not assert constructive denial of counsel in his statement of errors, which results in waiver. Pa.R.A.P. 1925(b)(4)(vii).
>
> In any event, the claim lacks merit. The record reflects that counsel lodged objections, cross-examined Commonwealth witnesses and proffered

> evidence in support of Appellant's defense. While
> trial counsel's erratic behavior is troubling, the
> record does not reflect a lack of "meaningful
> adversarial testing" or a breakdown in the
> adversarial process. See Commonwealth v. Williams,
> 950 A.2d 294, 312-313 (Pa. 2008).

(Doc. 10, Ex. I, Memorandum Opinion of the Superior Court of Pennsylvania, filed February 5, 2009).

Contrary to petitioner's claim of inherent prejudice, defense counsel capably cross-examined Commonwealth witnesses. For example, when Dr. Lawson testified that Schmidt could not communicate, defense counsel used nurse's notes that indicated some kind of communication. (See Doc. 10, Ex. B, N.T. 2/15/05 at 74-78). He also obtained a concession from Dr. Lawson regarding "white coat hypertension" and related it to his status as a doctor as a reason for Schmidt's failure to communicate with him. Id. at 78-80. Further, defense counsel properly pressed Dr. Lawson on his testimony that he took the nursing notes into consideration but did not recall the noted instances of communication. Id. at 80-83. Thus, it cannot be said, then, that petitioner did not have the assistance of counsel to the extent that a presumption of prejudice would arise, and, as with his other claims, petitioner fails to

demonstrate prejudice arising from defense counsel's beliefs regarding his "security issues."

Finally, petitioner next claims that trial counsel never informed him of his right to testify and the consequences of doing so. (Doc. 2, Memorandum of Law in support of petition). He contends that defense counsel "interfered with Defendant's right to testify by failing to inform him of his right to take the stand." Id.

To the extent that petitioner did testify at trial, there cannot have been interference with his right to testify. (See Doc. 10, Ex. B, N.T. 2/16/05 at 94-171). Dorn also points out that Thomas did not "discuss with petitioner whether he should testify at trial and the consequences of testifying or not testifying." (Doc. 2, Memorandum of Law in support of petition).

Once again, contrary to petitioner's representation, trail counsel testified that he did, in fact, review the "pros and cons" of Dorn testifying. (See Doc. 10, Ex. E, N.T. 11/17/06 at 108-109). In addition, the trial court reviewed with Dorn his right to testify before allowing him to do so. (Doc. 10, Ex. B, N.T. 2/16/05 at 91-93). As with his other claims, petitioner

simply fails to establish any prejudice from this alleged lack of advice from counsel.

While defense counsel's unreasonable beliefs are troubling, (see doc. 10, ex. E, N.T. 11-17-06 at 42 - 12), he did not entirely fail to function as petitioner's advocate, see Florida v. Nixon, 543 U.S. at 189-90. Nor has petitioner demonstrated that defense counsel's actions prejudiced petitioner, by demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Accordingly, this Court concludes that the state court's determination of petitioner's claims is reasonable.

An appropriate Order accompanies this Memorandum Opinion.


Dated: March 18, 2011

                                    s/Malcolm Muir
                                    MUIR
                                    United States District Judge

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

DERRICK LAMAR DORN,              :
                                 :
          Petitioner             :        No. 4:CV-09-2138
                                 :
     vs.                         :        Petition Filed 11/03/09)
                                 :
GERALD L. ROZUM,                 :        (Judge Muir)
                                 :
          Respondent             :

**ORDER**

March 18, 2011

For the reasons set forth in the accompanying Memorandum,

**IT IS HEREBY ORDERED THAT:**

1.   The petition for writ of habeas corpus (Doc.
     1), is **DENIED**.

2.   The Clerk of Court is directed to **CLOSE** this
     case.

3.   There is no basis for the issuance of a
     certificate of appealabilty.  <u>See</u> 28 U.S.C.
     § 2253(c).


                    <u>s/Malcolm Muir</u>
                    MUIR
                    United States District Judge